# In the United States Court of Federal Claims

WILLIAM KOOPMANN, *et al*.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

No. 09-cv-333 T

Filed: September 30, 2020

*William C. Brashear, Jr*., Dawsonville, Georgia, Plaintiff *pro se*

*Jason Bergmann*, U.S. Department of Justice, Tax Division, Court of Federal Claims Section, Washington, D.C., for the Defendant.

## MEMORANDUM AND ORDER

Plaintiff *pro se*, William C. Brashear, Jr. seeks a tax refund in the amount of $2,631.45 which he claims he overpaid as a "result of United Airlines canceling [his] pension plan." Plaintiff's Administrative Claim (Pl. Admin. Cl.) at 3 (ECF No. 113); *see also* Defendant's Answer (Def. Ans.) ¶ 5 (ECF No. 112).

Defendant moved to dismiss Plaintiff's complaint pursuant to Rule 12(b)(1) of Rules of the United States Court of Federal Claims (Rule(s)) or, in the alternative, for summary judgment pursuant to Rule 56. *See generally* Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alterative, for Summary Judgment with Respect to Plaintiff Brashear (Def. Mot.) (ECF No. 114); Def. Reply (ECF No. 118). Defendant argues that Mr. Brashear's tax-refund claim is time-barred under Internal Revenue Code (I.R.C.) § 6511, because Brashear did not file an administrative claim for tax refund either within three years of filing of the applicable tax return

or within two years of payment of the tax.  Def. Mot. at 7-10; *see* Def. Reply at 7-10. Defendant also argues that Brashear's claims are barred by the equitable-recoupment doctrine, because any refund to which he may be entitled in the 2000 tax year is less than the Federal Insurance Contributions Act (FICA) taxes he would owe in 2001-2005.  Def. Mot. at 10-13; *see also* Def. Reply at 4-5.  Finally, Defendant argues that the Internal Revenue Service (IRS) properly applied FICA tax to Brashear's compensation under United Airlines' non-qualified deferred compensation plan and that this issue has been resolved by the Federal Circuit's decision in *Balestra v. United States*, 803 F.3d 1363 (Fed. Cir. 2015).  *See* Def. Mot. at 13, 19; Def. Reply at 1-4.

Mr. Brashear cross-moved for summary judgment.  *See generally* "Plaintiffs' Cross Motion and Opposition to Defendant's Motion to Dismiss or for Summary Judgement with Respect to Plaintiff Brashear." (Pl. Mot.) (ECF No. 117); Pl. Reply (ECF No. 119).  Mr. Brashear does not dispute that his refund claim was not filed within three years of the filing of the relevant return, nor within two years of the payment of the taxes he seeks refunded.  *See generally* Pl. Mot. & Pl. Reply.  Rather, Mr. Brashear argues that it is violative of the Due Process Clause of the Fifth Amendment to apply a statute of limitations to bar a refund request when the event that triggered the purported eligibility for that refund --- the discharge of United Airlines' obligation to make payments towards his non-qualified retirement benefits --- did not occur until long after the statute of limitations had run.  *See* Pl. Mot. at 1-5; Pl. Reply at 2-4.  Additionally, Mr. Brashear continues to argue, despite the Federal Circuit's *Balestra* decision to the contrary, that the Treasury Department's application of the special timing rule, which does not does not allow for "the contingency that if the employer became bankrupt, an adjustment in the employee's tax would be made," violates Congress' directive as well as the Fifth Amendment's Due Process Clause.  *See* Pl. Mot. at 5-12; Pl. Reply at 4-14; *but see Balestra*, 803 F.3d at 1371.

2

This case was transferred to the undersigned judge on April 10, 2020.  *See* ECF No. 135. On May 7, 2020, this Court held a status conference and asked whether the parties wished to supplement their motions given the passage of time from when they originally filed their motions in 2017, before the prior judge.  Transcript of May 7, 2020 Status Conference (ECF No. 219) (Transcript) at 10-13.  Both parties declined.  *See id*. & ECF No. 200.  This Court has considered each of the parties' filings and arguments in ruling on the parties' motions.  For the reasons set forth below, this Court **GRANTS** Defendant's Motion to Dismiss, alternatively **GRANTS** Defendant's Motion for Summary Judgment, and **DENIES** Plaintiff's Cross-Motion for Summary Judgment.

<u>BACKGROUND</u>

The Federal Insurance Contributions Act (FICA), I.R.C. §§ 3101–3128, establishes a tax that is assessed by the Government based on wages paid to workers, and the money collected from the FICA tax is used to fund the Social Security and Hospital Insurance (HI).  Generally, wages are received when they are paid by the employer to the employee, and wages are paid by the employer when they are actually or constructively paid.  *See* 26 C.F.R. § 31.3121(a)–2.  The same rule is generally true for FICA tax purposes.  *See Balestra v. United States*, 803 F.3d 1363, 1366 (Fed. Cir. 2015) (citing 26 C.F.R. § 31.3121(v)(2)–1(a)(1) (the "special timing rule")).  However, some wages are treated differently under the "special timing rule" for FICA tax purposes.  *Id*.  The special timing rule applies to wages received from a non-qualified deferred compensation plan, such as the plan at issue in the present action.  *See Balestra*, 803 F.3d at 1366 (internal citations and quotations omitted).[1]  Under the "special timing rule" FICA tax is assessed only once, at the

---

[1] "Both Congress and the Treasury Department define 'non-qualified deferred compensation plan.'" *See Balestra*, 803 F.3d at 1366 (citing 26 U.S.C. § 3121(v)(2)(C) (Congress's definition); 26 C.F.R. § 31.3121(v)(2)–1(b) (Treasury's definition)).  There is no material dispute of fact that

3

later of either:  (A) the date services are performed or (B) the date when there is no substantial risk of forfeiture of the rights to such amount.  *See* 26 C.F.R. § 31.3121(v)(2)–1(a)(1) (tracking I.R.C. § 3121(v)(2)(A)).  There is "no substantial risk of forfeiture," if

> an amount deferred is considered reasonably ascertainable on the first date on which the amount, form, and commencement date of the benefit payments attributable to the amount deferred are known, and the only actuarial or other assumptions regarding future events or circumstances needed to determine the amount deferred are interest and mortality.

26 C.F.R. § 31.3121(v)(2)–1(e)(4)(i)(B).  The deferred benefits are taxed at their "present value," which is computed with reference to actuarial projections concerning life expectancy and a discount rate which accounts for the time value of money but does not account for the risk of employer default. *See* 26 C.F.R. § 31.3121(v)(2)-1(c)(2)(ii); *Balestra*, 803 F.3d at 1371.

The underlying facts of this case are undisputed.  In 2000, Mr. Brashear retired.  Pl. Admin. Cl. at 8; Def. Ans. ⁋ 3.  Mr. Brashear was covered by United Airlines' non-qualified deferred compensation plan.  Pl. Admin. Cl. at 6.  Pursuant to the special timing rule, Mr. Brashear paid the present value of his FICA taxes the year in which he retired.  Pl. Admin. Cl. at 6, 8.  Mr. Brashear received benefits under United Airlines' non-qualified deferred compensation plan from 2001 through 2005.  *See* Def. Ans. ⁋ 16.  The hospital insurance tax was 1.45% of an individual's "wages" received with respect to employment.  Pl. Admin. Cl. at 6.

On December 9, 2002, two years after Plaintiff's retirement, United Airlines filed a Chapter 11 bankruptcy petition.  Def. Ans. ⁋ 13.  In 2006, the Seventh Circuit Court of Appeals approved United Airlines' reorganization plan.  Def. Ans. ⁋ 13; *see also In re UAL Corp.*, 468 F.3d 444 (7th Cir. 2006).  As a result of these proceedings, United Airlines' obligation to pay Plaintiff's deferred compensation was discharged, with a portion of Mr. Brashear's benefits never having been paid.

---

the plan at issue is such a non-qualified deferred compensation plan.

Pl. Admin. Cl. at 4.  Mr. Brashear, however, had already been taxed on the full amount of benefits under the plan he was expected to receive.  Specifically, Mr. Brashear paid tax on $348,136.83 worth of non-qualified deferred compensation, of which he received only $166,657.17.  Pl. Admin. Cl. at 5-6, 9-13.  He paid $5,047.98 of FICA tax on these benefits, which reflects the 1.45% HI tax rate applied to the $348,136.83 present value of the benefits.  Pl. Admin. Cl. at 5; Def. Ans. ¶ 14.

On January 24, 2007, United Airlines informed Mr. Brashear that it would not pursue a tax refund for FICA taxes paid at the present value of Pilot Non-Qualified Plan Payments.  Pl. Admin. Cl. at 7.  Brashear filed his own administrative claim for refund, on IRS Form 843, "claim for Refund and Request for Abatement," on June 4, 2007.  Pl. Admin. Cl. at 3-14; Def. Ans. ¶ 4.  Mr. Brashear's refund claim purported to relate to the tax period from "04/28/2001 to 09/30/2005."  Pl. Admin. Cl. at 3.  However, attachments to the refund indicate that Brashear was seeking a refund of FICA tax on "the present value of [his] accrued supplemental plan benefit" that United Airlines had included in the "2000 FICA wages from United" reported for Mr. Brashear.  Pl. Admin. Cl. at 6.

On May 26, 2009, another retired United pilot, William Koopmann, filed a lawsuit in the United States Court of Federal Claims against the United States seeking, *inter alia*, a refund of the FICA taxes paid by United relating to his retirement.[2]  Mr. Koopmann purported to represent over 160 other retired United pilots, including Mr. Brashear.  Mr. Brashear did not sign the Koopmann complaint.  Instead, under a previous judge overseeing this case, on September 3, 2009, Mr. Brashear completed a "Plaintiff Information Sheet," which incorporated Mr. Koopmann's

---

[2] A second case purporting to contain the refund claim of Mr. Brashear and forty-seven other *pro se* taxpayers was filed the following year, on March 12, 2010.  Mr. Brashear was listed as a plaintiff in both *Koopmann v. United States* (No. 09-333; ECF No. 1) and *Sofman v. United States* (No. 10-157; ECF No. 1).  On May 12, 2020, Mr. Brashear voluntarily dismissed his claim in *Sofman. See Sofman v. United States,* No. 10-157, ECF No. 138.

complaint by reference.  *See* ECF No. 60 at 3.  The gravamen of Mr. Brashear's claim is that

because United Airlines withheld FICA tax from Mr. Brashear based on a present value calculation

of his retirement benefits at the time of his retirement, Mr. Brashear effectively paid Hospital

Insurance (HI) wage tax on wages he will never receive.  Specifically, Mr. Brashear states that he

should have paid the 1.45% HI tax on the present value of $166,657.17 (the amount he received),

which he claims would entitle him to a $2,631.45 tax refund.  Pl. Admin. Cl. at 5.

DISCUSSION

Pursuant to Rules 12(b)(1) and 12(h)(3), this Court must dismiss claims that do not fall

within its subject-matter jurisdiction.  When considering a motion to dismiss based on lack of

subject-matter jurisdiction, this Court accepts as true all uncontroverted factual allegations made

by the non-movant and draws all reasonable inferences in the light most favorable to that party.

*See Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014); *Pixton v. B&B

Plastics, Inc*., 291 F.3d 1324, 1326 (Fed. Cir. 2002).  If a motion to dismiss for lack of subject-

matter jurisdiction challenges the truth of the jurisdictional facts alleged, the Court may consider

relevant evidence outside the complaint in resolving the dispute.  *See Reynolds v. Army & Airforce

Exch. Serv*., 846 F.2d 746, 747 (Fed. Cir. 1988) (citations omitted); *Banks v. United States*, 741

F.3d 1268, 1277 (Fed. Cir. 2014).  This Court must liberally construe the filings of *pro se* plaintiffs.

*See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

However, a *pro se* plaintiff still has the burden of establishing this Court's jurisdiction by a

preponderance of the evidence.  *Reynolds*, 846 F.2d at 748 (Fed. Cir. 1988); *Curry v. United States,

787 F. App'x 720, 722 (2019) (citing *Kelly v. Sec'y U.S. Dep't of Labor*, 812 F.2d 1378, 1380

(Fed. Cir. 1987)).  As with all other litigants, this Court must have jurisdiction over claims brought

by *pro se* litigants.  *See Reynolds*, 846 F.2d at 748.

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Rule 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49 (1986). The moving party carries the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A "genuine" dispute is one that "may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. A material fact is one that "might affect the outcome of the suit under the governing law." *Id.* at 248. In considering the existence of a genuine issue of material fact, a court must draw all inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If no rational trier of fact could find for the non-moving party, a genuine issue of material fact does not exist and the motion for summary judgment may be granted. *Id.* With respect to cross-motions for summary judgment, each motion is evaluated on its own merits and reasonable inferences are resolved against the party whose motion is being considered. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987). To the extent there is a genuine issue of material fact, both motions must be denied. *Id.*

In order to fall within the Tucker Act's waiver of sovereign immunity, a plaintiff's claim for money damages against the United States must be based upon an express or implied contract, or a money-mandating constitutional provision, statute, or regulation. *See* 28 U.S.C. §1491(a); *Mitchell*, 463 U.S. at 216-18. In the present case, where Plaintiff seeks a refund of federal taxes, he must meet the jurisdictional threshold for filing a refund claim under I.R.C. § 7422(a). *See United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 4, 14 (2008); *RadioShack*, 566 F.3d at 1360; *see also Dumont v. United States*, 345 F. App'x 586, 592 (Fed. Cir. 2009). "[I]t is a well-established rule that a timely, sufficient claim for a[tax] refund is a jurisdictional prerequisite to a

refund suit." *Greene v. United States,* 191 F.3d 1341, 1343 (Fed. Cir. 1999) (quoting *Sun Chem. Corp. v. United States*, 698 F.2d 1203, 1206 (Fed. Cir. 1983)).[3]  A federal tax refund claim must be filed either: within three years of filing the return; or within two years of paying the tax, whichever is later.  *See* I.R.C. § 6511(a) (the general statute of limitations for filing a federal tax refund claim). With respect to FICA tax, I.R.C. § 6513(c) provides for purposes of section 6511's limitations period (l) a return for any quarterly period ending in a calendar year is considered filed on April 15 of the following year; and (2) a tax with respect to any such period is considered paid on the following April 15, so long as it was actually paid before that date.  *See* I.R.C. § 6513(c).

Here, United Airlines filed its four quarterly returns for the year 2000 on September 11, 2000, September 4, 2000, December 4, 2000, and March 12, 2001, respectively.  *See* Def. Mot. Ex. B.  Under section 6513(c), all four of those returns were considered filed as of April 15, 2001. Based on those filing dates, any claim for refund of FICA taxes paid in connection with those returns was due no later than April 15, 2004, three years later.  IRS transcripts further reflect that United Airlines made all applicable tax deposits for each of the four quarters no later than April 3, 2000, July 7, 2000, October 11, 2000, and January 4, 2001.  *See* Def. Mot. Ex. B.  Under I.R.C. § 6513(c), all federal tax deposits were considered paid as of April 15, 2001.  Based on United's payment of the federal tax deposits, any refund claim for FICA taxes paid in connection with those returns would be due no later than April 15, 2003, two years later.  However, for the fourth quarter of 2000, United Airlines did transfer some credits into the account on various dates between February 28, 2002 and April 29, 2002.  *See* Def. Mot. Ex. B.  If United Airlines had used those

---

[3] This Court recognizes the Federal Circuit's recent commentary in *Walby v. United States*, 957 F.3d 1295, 1299–01 (Fed. Cir. 2020), regarding whether a court lacks subject matter jurisdiction over a claim that fails to meet the requirements of  I.R.C. §§ 7422(a) and  6511(a).  Accordingly, the Court clarifies that for the same reasons as set forth in this opinion, and as there is not a material dispute of fact present, this Court alternatively grants Defendant's summary judgment motion.

credit transfers to satisfy Mr. Brashear's FICA tax liability, then any refund claim would be due no later than April 29, 2004, two years afterwards.  *See* I.R.C. § 6511(a).

While this Court sympathizes with Mr. Brashear, and recognizes the long wait he has had to endure for a ruling under prior case administration, this Court is bound by statutes as passed by Congress and by Federal Circuit precedent, both of which mandate dismissal of Mr. Brashear's claim.  Specifically, Mr. Brashear's claim is unfortunately time-barred by I.R.C. § 6511(a) because he did not file his refund claim until years later, on June 4, 2007, well past any of the above-referenced deadlines.  Pl. Admin. Cl. at 3-14.  Mr. Brashear acknowledges that there is no dispute of material fact and does not refute that his refund was untimely under I.R.C. § 6511(a).  *See* Pl. Mot. at 1; *see generally* Pl. Mot. & Pl. Reply.  Instead, Mr. Brashear argues that I.R.C. § 6511(a) does not apply to FICA taxes collected under the special timing rule.  Pl. Mot. at 2; Reply at 2-3. Moreover, he asserts that his claim should be permitted under an "equitable exception" because the alleged taxing error upon which he based his refund claim did not occur until after the statute of limitations in I.R.C. § 6511(a) had expired.  Pl. Mot. at 5-7; Reply at 2-3.  He further argues that not applying an equitable exception is violative of the Due Process Clause of the Fifth Amendment because it would deprive him of a reasonable opportunity to seek a refund.  *See* Pl. Mot. at 5-12; Pl. Reply at 4-14.  These contentions are unavailing.

First, as the Supreme Court has ruled, "the time limits for filing administrative refund claims in I.R.C. § 6511" are "set forth in unusually emphatic form" and "apply to '*any* tax imposed by this title.'"  *Clintwood Elkhorn*, 553 U.S. at 7 (emphasis in original); *see also RadioShack Corp. v. United States*, 566 F.3d 1358, 1362 (Fed. Cir. 2009) (rejecting an argument that unique characteristics of the Communications Excise Tax, exempted the plaintiff's claim for refund from the requirements of section 6511).  There is no statutory support for excluding claims arising out

of section 3121(v)(2) for the time limitations established by § 6511(a).  Specifically, section 3121(v)(2)(A) states:

> Treatment of certain non-qualified deferred compensation plans.—
> (A) In general.--Any amount deferred under a non-qualified deferred compensation plan shall be taken into account for purposes of this chapter as of the later of--
> (i) when the services are performed, or
> (ii) when there is no substantial risk of forfeiture of the rights to such amount.

Section 3121(v)(2) of the I.R.C. is silent about the procedure for filing a claim for refund.[4] And section 3121(v)(2)(B)'s explicit dictate, that non-qualified deferred compensation plans are to be taxed as wages only once, indicates that Congress intended to subject FICA taxes calculated under "special timing rule" to the same refund process as other FICA taxes.  Because there is no textual support in the language of section 3121(v)(2) (or any other law) that would warrant an application of a different statute of limitations, this Court must apply the timing requirements established by section 6511(a).

The period of limitations set forth in I.R.C. § 6511 is not subject to equitable tolling. *Brockamp v. United States*, 519 U.S. 347, 350 (1997) *superseded in part by statute, i.e.*, the Internal Revenue Service Restructuring and Reform Act of 1998, Pub.L. No. 105–206, § 3202, 112 Stat. 685, 740–41, *as recognized in Brosi v. Commissioner*, 120 T.C. 5, 12 n. 6 (2003); s*ee also Kingston Prod. Corp. v. United States*, 368 F.2d 281, 288 (Ct. Cl. 1966) (general  principles of equity may not override statutory requirements for timely filing of tax refund claims.); *Boeri v. United States,* 724 F.3d 1367, 1369 n.3 (Fed. Cir. 2013) (noting that "the Supreme Court has held that the restrictions set forth in § 6511 for filing tax refund claims cannot be tolled for equitable reasons"); *Orlova v. United States*, 347 F. App'x 578, 580–81 (Fed. Cir. 2009) (noting Congress has not made

---

[4] The Treasury Department regulation interpreting this section specifically states that refunds are to be made in accordance with section 6511.  *See e.g.,* 26 C.F.R. § 31.3121(v)(2)-1 (e)(7) (Example 12); *id*. at (f)(2)(iii) & (4) (Example 2); *id*. at (g)(3), (4)(c), (5) (Example 4).

the equitable tolling doctrine available to tax refund claims).

Nor is there a "discovery rule" for section 6511(a) timing requirements. The fact "that a taxpayer does not learn until after the limitations period has run that a tax was paid in error, and that he or she has a ground upon which to claim a refund, does not operate to lift the statutory bar." *United States v. Dalm*, 494 U.S. 596, 609 n.7 (1990); *see e.g., Knis v. United States*, 10 F. App'x 942, 944 (Fed. Cir. 2001) (rejecting an argument that the statute of limitations should not be applied to bar the taxpayer's claim because she was unaware that her employer was responsible for paying her social security taxes.); *Lovett v. United States*, 81 F.3d 143, 145 (Fed. Cir. 1996) (rejecting an argument that the statute of limitations should be tolled because plaintiff was not aware that the tax was wrongfully collected until after the statute of limitations.); *Wadlington v. United States*, 176 F. App'x 105 (Fed. Cir. 2006) (rejecting an argument that taxpayer "did not have an opportunity to file a timely refund because he was not aware before the expiration of the statutory time period that he was entitled to the refund").

In fact, at least two other courts have rejected Mr. Brashear's statute of limitations arguments. In *Jackson v. Internal Revenue Service*, No. 7:07-CV-168-H(2), 2008 WL 755916 (E.D.N.C. 2008), the district court held that a refund claim was untimely in circumstances virtually identical to those here. There, a retired United pilot sought a refund of FICA taxes withheld on "the present value of his entire non-qualified pension plan" under the special timing rule in § 3121(v)(2). *Id*. at *1. When that pilot retired, United paid FICA taxes totaling $8,239.05, based on the present value of his entire non-qualified pension plan of $568,210.04. When United filed for bankruptcy, that plaintiff's pension plan was terminated, with plaintiff only receiving payments totaling $137,611.60. *Id*. at *1. The pilot in that case filed a refund claim with the IRS on August 3, 2006, seeking a refund for the 2002 tax year of FICA tax paid on August 9, 2002. *Id*. The court

held that Mr. Jackson had not filed a timely administrative claim under § 6511 and dismissed his suit as a result.  *Id.*

Likewise, in *United States v. Bates*, No. 8:12-cv-833-T, 2015 WL 7444285 (M.D. Fla. 2015), the district court entered a judgment in the Government's favor in a suit under § 7405 to recover an erroneous refund of tax.  Mr. Bates, who was also a plaintiff in both *Koopmann* and *Sofman*, had filed an administrative refund claim on January 8, 2008, seeking a refund of FICA taxes that United had paid in 2004.  *Id.* at *1-2.  An IRS Appeals Officer issued an erroneous refund which the United States sued to recover.  *Id.* at *2.  The district court held that "the Office of Appeals exceeded its authority when it authorized the refund . . . to the Bates because the request for refund was filed outside the statutory limitations period provided by 26 U.S.C. § 6511."  *Id.* at *5.  In reaching its holding, the district court rejected the argument that "there was no basis to request a refund until the bankruptcy court definitively ruled that Mr. Bates would no longer be receiving any payments from United under the Plan," because "the limitations period under section 6511 is not subject to equitable tolling."  *Id.* at *4.

Further, the lack of an "equitable exception" to section 6511(a)'s time limitations does not render the statute unconstitutional as applied to Mr. Brashear, under the Due Process Clause or any other constitutional provision.  As the sovereign, the United States cannot be sued in its own courts unless Congress explicitly authorizes such suit.  *See United States v. Sherwood*, 312 U.S. 584, 586 (1941).  "A necessary corollary of this rule is that when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied."  *Block v. North Dakota ex rel. Bd. of Univ. and Sch. Lands*, 461 U.S. 273, 287 (1983).  One of those conditions is the statute of limitations, which reflects Congress's decision to waive sovereign immunity only if suit is brought

within a specific time period. *See Walby v. United States*, 957 F.3d 1295, 1299–301 (Fed. Cir. 2020). "Statutes of limitation ... are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Order of R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348-49 (1944). Furthermore, "[a] time not unreasonably short for the beginning of actions may be fixed by the legislature, having in view particular conditions without violating the due process clause." *Ky. Union Co. v. Kentucky*, 219 U.S. 140, 156–57 (1911).

This Court holds that the time requirements outlined in section 6511(a) are not unreasonably short. It has long been recognized that "[i]t is essential to the honor and orderly conduct of the government that its taxes should be promptly paid, and drawbacks speedily adjusted" and that rules proscribing time limits for which tax refund suits can be brought are "neither arbitrary nor unreasonable." *Cheatham v. United States*, 92 U.S. 85, 89 (1875) (rejecting argument that twelve-month statute of limitations cannot begin "to run until the cause of action accrued").

Mr. Brashear could have filed a claim for refund protesting the application of the special timing rule. In this respect, section 6511(a) did not entirely deprive Mr. Brashear of an opportunity to file a refund. Further, there was good reason for Mr. Brashear not to challenge the legality of the special timing rule. While it is true that taxation of the compensation at its present value can sometimes work to an employee's disadvantage such as in the case of an employer going bankrupt, the special timing rule can also work to an employee's advantage. Indeed, Mr. Brashear himself benefitted from the application of the special timing rule in this case. Mr. Brasher paid only a 1.45% Medicare tax on the present value of his compensation in the 2000 tax year, for a total tax of $5,047.98. Pl. Admin. Cl. at 5. Had Mr. Brasher paid FICA tax on the deferred compensation

as he received it in 2001 through 2005, he would have paid both a 1.45% Medicare tax and a 6.2% Social Security tax on the compensation he later received, for a total tax of $12,479.27.  *See* Def. Mot. Ex. A (showing Mr. Brashear's wage income was below the Social Security wage cap for tax years 2001-2005); *see also* I.R.C. § 3101(a) (imposing "tax equal to 6.2 percent of the wages").

This Court recognizes that the application of section 6511(a) can be viewed as operating in an unfair manner where Mr. Brashear had little practical reason to challenge the application of the special timing rule until after the time period permitted to seek a refund had lapsed.  However, this Court is bound by Congress' legislative actions and this Court declines to engage in judicial engraftment of the federal statute at issue.  Congress made a choice in enacting section 6511(a), and the result is a tradeoff between an administratively efficient tax refund scheme that unfortunately sometimes leads to seemingly unfair results, and a scheme that would correct every taxing error, but would be administratively inefficient.  Congress has established a detailed refund scheme that subjects complaining taxpayers to various requirements before they can bring suit. *Clintwood Elkhorn Min. Co.*, 553 U.S. at 11-12.  This scheme was designed by Congress "to advise the appropriate officials of the demands or claims intended to be asserted, so as to insure an orderly administration of the revenue . . . to provide that refund claims are made promptly, and to allow the IRS to avoid unnecessary litigation by correcting conceded errors."  *Clintwood Elkhorn Min. Co.*, 553 U.S. at 11–12 (internal citation and quotation omitted).  "Even when the constitutionality of a tax is challenged, taxing authorities do in fact have an 'exceedingly strong interest in financial stability.'" *Clintwood Elkhorn Min. Co.*, 553 U.S. at 11–12 (quoting *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, Fla. Dept. of Business Regulation*, 496 U.S. 18, 37 (1990)). As the Supreme Court has noted, Congress has carefully weighed these competing interests and has decided "[t]he nature and potential magnitude of the administrative problem suggest that

Congress decided to pay the price of occasional unfairness in individual cases (penalizing a taxpayer whose claim is unavoidably delayed) in order to maintain a more workable tax enforcement system." *Brockamp*, 519 U.S. at 352–53.

Finally, even if Mr. Brashear's claims are not time-barred, his arguments would nevertheless fail, as the Federal Circuit has already rejected Mr. Brashear's arguments related to the Treasury Department's application of the special timing rule in the identical situation. *Balestra*, 803 F.3d at 1369-1373 (ruling that Treasury regulation concerning special timing rule was not invalid or inapplicable where United Airlines was in bankruptcy proceedings when the present value of the deferred compensation was calculated).  In *Balestra*, a retired United Airlines pilot brought a suit seeking a FICA tax refund.  Like the present case, Mr. Balestra paid FICA taxes on retirement benefits he never received due to United Airlines' bankruptcy.  Mr. Balestra challenged the Treasury Department's application of the special timing rule, which taxed plaintiff's deferred compensation at the "present value" as of the date of plaintiff's retirement but also "prohibited consideration of an employer's financial condition (e.g., bankruptcy) in calculating the amount deferred." *Balestra*, 803 F.3d at 1365 (citing 26 C.F.R. § 31.3121(v)(2)–1(c)(2)(ii)).

The Federal Circuit rejected Mr. Balestra's arguments that these regulations were invalid stating, "[i]t may seem unfair in a specific instance such as this, but in balancing the desire for simplicity against the ideal of ultimate comprehensiveness, the agency must be allowed a reasonable degree of discretion." *Balestra*, 803 F.3d at 1374 (holding that Treasury Department's regulation was due deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)).  Regardless of this Court's views on *Chevron* deference, it is axiomatic that this Court is bound by the Supreme Court's decision and the Federal Circuit's analysis and

15

holding in *Balestra*, 803 F.3d at 1365, and Mr. Brashear has not provided a persuasive reason why his case should be treated differently.  Accordingly, this Court denies Mr. Brashear's Cross-Motion for Summary Judgment for the same reasons as set forth above, and alternatively dismisses Mr. Brashear's motion as moot as this Court lacks jurisdiction to consider Mr. Brashear's claim.

CONCLUSION

For the reasons set forth above, this Court **GRANTS** Defendant's Motion to Dismiss (ECF No. 114) pursuant to Rule 12(b)(1) and 12(h)(3), and alternatively **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 114).   This Court **DENIES** Plaintiff's Cross-Motion for Summary Judgment (ECF No. 117).  Plaintiff's Complaint is dismissed.

IT IS SO ORDERED.

  s/Eleni M. Roumel   <br>ELENI M. ROUMEL<br>Judge

September 30, 2020
Washington, D.C.